1

2

3

4

5              IN THE UNITED STATES DISTRICT COURT

6            FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   VIRGINIA PEREZ, individually and on behalf of        No. C 07-3473 SI
    all other similarly situated
9                                                        **ORDER DENYING DEFENDANT BMJ'S**
            Plaintiffs,                                  **MOTION TO COMPEL ARBITRATION**
10                                                       **AND STAY LITIGATION PENDING**
            v.                                           **ARBITRATION**
11
    MAID BRIGADE, INC., a Delaware Corporation,
12  and BMJ LLC, a California Limited Liability
    Company,
13
            Defendants.
14  _____/

15

16

17          Before the Court is BMJ LLC's motion to compel arbitration and stay litigation pending

18  arbitration.  Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for

19  resolution without oral argument, and VACATES the October 12, 2007 hearing.  Having considered the

20  papers submitted, and for the reasons set forth below, the Court DENIES the motion.

21

22

23                              **BACKGROUND**

24  **1.      Plaintiff's employment and class action allegations**

25          Plaintiff Virginia Perez worked as a maid and as an office assistant for defendant BMJ LLC from

26

27

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

in or about 2003 until June 1, 2007.[1]  BMJ does business in California as Maid Brigade of Marin County, and is a franchisee of defendant Maid Brigade, Inc, a Delaware corporation.  Complaint ¶ 2; BMJ's Answer at 4.  Plaintiff alleges she was an employee of both BMJ and Maid Brigade.  Complaint ¶ 4.  Both defendants admit plaintiff was an employee of BMJ, but both deny she was an employee of Maid Brigade.  BMJ's Answer at 4; Maid Brigade's Answer at 4.  Plaintiff alleges that during employment, she sometimes worked in excess of eight hours per day and forty hours per week, often without rest periods or meal breaks.  Complaint ¶ 5.  She alleges she did not receive the minimum wage or overtime compensation during these periods.  *Id.* ¶ 7.  She also alleges that, although her employment ended on June 1, 2007, she did not receive her final check until June 8, 2007.  *Id.* ¶¶ 8, 11.  Furthermore, plaintiff alleges BMJ failed to provide pay stubs displaying certain information required by state law. *Id.* ¶ 22.  Based on these allegations, she filed a class action against both defendants claiming various violations of state and federal labor laws, including the Federal Labor Standards Act.

## 2.    The arbitration agreement

BMJ moves the Court to stay litigation pending arbitration on the basis of an arbitration agreement allegedly signed by plaintiff as part of her employment agreement.  BMJ contends plaintiff was hired in or around 2002, and that she executed an arbitration agreement in connection with her employment agreement.  BMJ submitted to the Court a Spanish version of the agreement, which it claims bears plaintiff's signature.  Abbott Decl. Ex. A.  BMJ also presented an English translation of the agreement.  *Id.*  The English version reads, in relevant part:

> **H.  Alternative Dispute Resolution Agreement**
> I.  In the event I believe that Maid Brigade has violated any of my legal rights arising out of or relating to my employment, or termination thereof, I agree to submit any and all such disputes to binding arbitration and not to file a lawsuit alleging a violation of my legal rights. Arbitration will be handled in accordance with the rules and procedures provided in this Agreement and the rules of the American Arbitration Association, where not in conflict with this Agreement.

_____

[1]Plaintiff's precise date of hire is unclear: BMJ states that plaintiff was "hired" in or around 2002, while the complaint alleges she "worked" in or around 2003 through June 1, 2007.  Motion to Compel Arbitration ("Motion") at 3; Complaint ¶ 4; However, plaintiff's declaration states that she "began working for Maid Brigade in or about June 2002."  Perez Decl. ¶ 3.

United States District Court
For the Northern District of California

II.  Categories of disputes covered by this policy include, but are not[2] limited to:

     A.  Claims of employment discrimination . . . ;

     B.  Common law claims, including contract and tort claims; and

     C.  Worker's compensation claims.

       . . .

IV.  This policy includes the exclusive forum for dispute resolution and is intended to be final and binding on all parties.

*Id.*  The Spanish version is hand dated "12/20/02" and is signed in block letters: "VIRGINIA PEREZ."

*Id.*  The Spanish version of the arbitration agreement is marked page "60" in the lower right corner of page, and the English version is marked page "53." *Id.*

BMJ submitted other portions of a packet of employment forms purportedly bearing plaintiff's signature, including an English language "non-competition agreement." *Id.* Although there are blanks on that agreement for the employer to fill in its own name and address, those blanks are not filled in. The document also contains a notation at the top that reads, "Because this form must be customized for every state, it was not translated into Spanish." Below that, the header of the form reads, "A.  Non-Compete Agreement (must be customized for your State)."

In addition to the non-compete agreement and the arbitration agreement, BMJ's exhibit includes forms relating to a uniform policy, a job description, pay rates, and an employment manual acknowledgment form. *Id.* These forms refer throughout to "Maid Brigade" as the employer. The Court found no reference to "BMJ," "BMJ, Inc.," or "Maid Brigade of Marin."

**LEGAL STANDARD**

Section 4 of the Federal Arbitration Act permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner

---

[2]The Court has examined the Spanish language version allegedly executed by plaintiff. While the parties have not disputed the accuracy of the translation, and while the translation appears to be accurate in all aspects relevant here, the Court notes that the word "not" is absent from the first sentence of paragraph II of the Spanish version.

United States District Court
For the Northern District of California

provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *See Cohen v. Wedbush, Noble Cooke, Inc.*, 841 F.2d 282, 285 (9th Cir. 1988).

The FAA espouses a general policy favoring arbitration agreements. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Federal courts are required to rigorously enforce an agreement to arbitrate. *See id.* In determining whether to issue an order compelling arbitration, the Court may not review the merits of the dispute, but must limit its inquiry to (1) whether the arbitration agreement is governed by Chapter One of the Federal Arbitration Act (rather than Chapter Two or Chapter Three); (2) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce, (3) whether there exists a valid agreement to arbitrate, and (4) whether the dispute falls within the scope of the agreement to arbitrate. 9 U.S.C. §§ 2, 202, and 302; *see Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991), *cert denied*, 503 U.S. 919 (1992) (citing *Prima Paint's* clear directive that courts disregard surrounding contract language and "consider only issues relating to the making and performance of the agreement to arbitrate, *Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)); *Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334, 347 (S.D.N.Y. 2005) (noting the jurisdictional distinctions between Chapters One, Two and Three of the FAA). If the answer to each of these queries is affirmative, then the Court must order the parties to arbitrate in accordance with the terms of their agreement. 9 U.S.C. § 4.

The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable," but courts may decline to enforce them when grounds "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). In interpreting the validity and scope of an arbitration agreement, the courts apply state law principles of contract formation and interpretation. *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). Accordingly, the Court reviews the arbitration agreement here in light of the "liberal federal policy favoring arbitration agreements," *Moses H. Cone*, 460 U.S. at 24, and considers its enforceability according to

California's laws of contract formation, *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003).

**United States District Court**
**For the Northern District of California**

**DISCUSSION**

Plaintiff opposes arbitration primarily on two grounds: (1) plaintiff did not sign the arbitration agreement; and (2) the arbitration agreement is unconscionable and therefore unenforceable.[3] Defendant Maid Brigade does not oppose arbitration between BMJ and plaintiff, but does oppose arbitration between itself and plaintiff on the ground that it is not a party to the arbitration agreement.

**I.    Execution of the arbitration agreement**

Section 4 of the Federal Arbitration Act provides for a summary process in resolving disputes over the existence of an arbitration agreement. *See* 9 U.S.C. § 4.[4] Where the disputed arbitration agreement was allegedly executed in California, or where the parties have otherwise agreed, the Court applies California's substantive law in determining its validity. *See Circuit City Stores, Inc. v. Mantor*,

---

[3]Plaintiff also argues that the Federal Arbitration Act does not govern the arbitration agreement because BMJ has not proved it is involved in interstate commerce, thus failing to establish the jurisdictional requirement of 9 U.S.C. § 2. Plaintiff makes this argument despite the fact that her complaint alleges that BMJ is an "enterprise" subject to federal jurisdiction under the FLSA, 29 U.S.C. § 203 (implying BMJ is involved in interstate commerce for the purpose of the FLSA's jurisdictional requirements); and that BMJ receives training, "nationwide advertising," software, and access to Ford Focus vehicles from Maid Brigade. Complaint ¶ 2. BMJ contends it does engage in interstate commerce. Reply at 3.

Section 2 of the FAA makes enforceable a written arbitration provision in "a contract *evidencing* a transaction *involving* commerce." 9 U.S.C. § 2 (emphasis added); *see also Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 268 (1995). In *Allied-Bruce*, an arbitration agreement contained in a contract for a termite inspection in Alabama was found to be governed by the FAA because the Alabama Terminix franchisee had a multi-state relationship with its franchisor, and because the materials used by the franchisee came from outside Alabama. 513 U.S. at 282. The situation here is similar to that in *Allied-Bruce*. Accordingly, the Court finds that the arbitration agreement is governed by the FAA.

[4]Courts employ "a summary judgment approach for such hearings, ruling as a matter of law when there is no genuine issue of material fact." *Geoffroy v. Wash. Mut. Bank*, 484 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007); *see also Ferguson v. Countrywide Credit Indus.*, 2001 WL 867103 (C.D. Cal. 2001), *aff'd*, 298 F.3d 778, 782 (9th Cir. 2002); *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997) (under section 4 of the FAA, a party resisting arbitration and requesting a trial must submit evidence demonstrating a genuine issue of fact, as when opposing a motion for summary judgment).

335 F.3d 1101, 1105 (9th Cir. 2003). Under California law, the petitioner bears the burden of proving the existence of an arbitration agreement by the preponderance of the evidence. *See Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996). If the party opposing arbitration raises a defense to enforcement such as fraud in the execution of the agreement "that party bears the burden of producing evidence, and proving by a preponderance of the evidence, any fact necessary to the defense." *Id.*

Plaintiff does not challenge the existence of the arbitration agreement, but asserts in her opposition that she did not sign the arbitration agreement. However, plaintiff's sworn statements in her accompanying declaration are not so categorical. Plaintiff states, in reference to the arbitration agreement, "I did [sic.] not recall signing these documents. I do not recall being presented with any thick package of documents such as Exhibits 1 and 2. When I began working for Maid Brigade in or about June of 2002, I signed some documents, but they differed from those that are attached as Exhibits 1 and 2." Perez Decl. ¶¶ 2-3. Plaintiff also notes that the arbitration agreement is dated December 20, 2002, approximately six months after she began working for Maid Brigade (according to her declaration).

The Court finds that plaintiff has not met her burden to prove that she did not sign the agreement. Plaintiff does not unequivocally deny signing the document. The Court also notes that the signature on plaintiff's sworn declaration appears similar, if not identical, to the signature on the arbitration agreement. *Compare* Abbott Decl. Ex. A *with* Perez Decl. at 1.

*Ferguson v. Countrywide Credit Indus.*, 2001 WL 867103 (C.D. Cal. 2001), *aff'd*, 298 F.3d 778, 782 (9th Cir. 2002), is both instructive and distinguishable. In *Ferguson*, the court found that the plaintiff in that case had "raised a genuine dispute regarding whether an arbitration agreement govern[ed] her claims . . . ." *Id.* at *1. There, the plaintiff not only asserted that she had never seen the purported agreement prior to litigation, she pointed out that the signature and printed name on the document "appeared to have been traced over or otherwise altered." *Id.* Here, in contrast, plaintiff's denial is based solely on her lack of memory of the document. She does not deny that the signature is genuine. That plaintiff does not recall every single document signed in connection with her employment is not surprising.

Plaintiff also contends that, "even if the purported signature of plaintiff is genuine," she is

6

1  entitled to relief because she did not understand that by agreeing to arbitration, she was waiving her

2  right to access the courts.  Plaintiff relies on California Civil Code section 1577 and *Pacific State Bank*

3  *v. Greene*, 110 Cal. App. 4th 375, 388-390 (2003), for the proposition that a mistake as to the nature of

4  the document being signed is grounds for relief.

5          Plaintiff's unilateral mistake defense lacks merit.  "California law allows rescission of contract

6  for unilateral mistake only 'when the unilateral mistake is known to the other contracting party and is

7  encouraged or fostered by that party."  *Brookwood v. Bank of Am.*, 45 Cal. App. 4th 1667, 1673-74

8  (1996) (citation omitted).  In *Brookwood*, the court held that the employee was "bound by the provisions

9  of the [arbitration] agreement regardless of whether [she] read it or [was] aware of the arbitration clause

10 when [she] signed the document."  *Id*. at 1674 (citing *Macaulay v. Norlander*, 12 Cal. App. 4th 1, 6

11 (1992)).  "No law requires that parties dealing at arm's length have a duty to explain to each other the

12 terms of a written contract, particularly where, as here, the language of the contract expressly and

13 plainly provides for the arbitration of disputes arising out of the contractual relationship."  *Id*.

14

15 **II.      Unconscionability**

16         When deciding whether the parties agreed to arbitrate a certain matter, federal courts "should

17 apply ordinary state-law principles that govern the formation of contracts."  *First Options*, 514 U.S. at

18 944; *Circuit City Stores, Inc.*, *v. Adams*, 279 F.3d 889, 892 (2002).  While "courts may not invalidate

19 arbitration agreements under state laws applicable only to arbitration provisions," general contract

20 defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to

21 invalidate arbitration agreements."  *Circuit City*, 279 F.3d at 982 (quoting *Doctor's Assocs., Inc. v.*

22 *Casarotto*, 517 U.S. 681, 687 (1996)).  Because plaintiff was employed in California, the Court looks

23 to California contract law to determine the validity of the arbitration agreement.  *See id.*  The relevant

24 California law here requires the Court to determine whether the arbitration clause was unconscionable

25 at the time it was made.  *See* Cal. Civ. Code § 1670.5; *Armendariz v. Found. Health Psychare Servs.,*

26 *Inc.*, 24 Cal. 4th 83, 114 (2000).  If it so finds, "the court may refuse to enforce the contract, or it may

27 so limit the application of any unconscionable clause as to avoid any unconscionable result."  *Id.*

28         "Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion."

7

*Armendariz*, 24 Cal. 4th at 113.  If the contract is adhesive, the Court must then determine whether "other factors are present which, under established legal rules . . . operate to render it unenforceable"; that is, whether the contract is unconscionable.  *Id.* (internal citations and quotations marks omitted). Unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one sided results.  *Id.* at 114 (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486-87 (1982) (internal quotation marks omitted)).  Both elements must be present, although not necessarily to the same degree. *Armendariz*, 24 Cal. 4th at 114.  Courts apply a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa."  *Id.*

Here, the employment agreement is one of adhesion because it is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."  *Id.* at 113 (defining "adhesion"). Accordingly, the Court must measure the procedural and substantive qualities of the arbitration agreement.

### A.    Procedural unconscionability

To evaluate procedural unconscionability, the Court must examine how the parties negotiated their contract and "the circumstances of the parties at the time."  *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106 (2003).  Courts typically search for signs of surprise and oppression when evaluating procedural unconscionability. *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (1997).  Surprise refers to "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms."  *Id.* (internal citations and quotation marks omitted).  Oppression springs "from an inequality of bargaining power [that] results in no real negotiation and an absence of meaningful choice."  *Id.*

Here, plaintiff has produced evidence showing both surprise and oppression.  She states that she does not remember signing the arbitration agreement, and that she does not know what arbitration means.  The arbitration clause is also marked page "60" of what appears to have been a very thick packet of documents she was presented in connection with her employment.  As for oppression, the

United States District Court
For the Northern District of California

1   unequal bargaining power of the two parties is significant; plaintiff is a maid who does not speak

2   English, and her employer is a company with access to legal counsel.[5] There can be no doubt about who

3   is the stronger party: plaintiff's choice was to accept the terms of employment as offered, or not at all.

4

5       **B.      Substantive unconscionability**

6           Plaintiff relies on *Armendariz*, 24 Cal. 4th 83, and *Circuit City v. Adams*, 279 F.3d 889, to argue

7   that the arbitration agreement is substantively unconscionable because it is "exclusively one-way."

8   Plaintiff reads the clause to require her to submit to binding arbitration if she believes Maid Brigade has

9   violated any of her rights arising out of the employment agreement, but contends that it contains no such

10  restriction on the employer.[6]

11          In *Armendariz*, the arbitration clause required only employees to arbitrate their wrongful

12  termination claims against the employer, but did not require the employer to arbitrate claims it may have

13  against the employees. *See Armendariz*, 24 Cal. 4th at 115-16. The court held that, "in the context of

14  an arbitration agreement imposed by the employer on the employee, such a one-sided term is

15  unconscionable." The court reasoned, "although parties are free to contract for asymmetrical remedies

16

17      [5]Plaintiff contends she was hired in June 2002, but points out that the arbitration agreement was signed in December 2002. The alleged six month delay in executing the arbitration agreement also

18  raises an inference of both surprise and oppression.

19      [6]Plaintiff makes three other arguments. First, she contends that the agreement's reference to the American Arbitration Association rules is ambiguous because either the AAA's Labor Arbitration Rules

20  or its Employment Arbitration Rules might apply. The rules themselves resolve any such ambiguity in favor of the AAA's Employment Rules. The Labor Rules apply when reference to the AAA is made

21  "in a collective bargaining agreement." AAA Labor Rules art. 1. Neither party has alleged that a collective bargaining agreement exists here. In contrast, the Employment Rules apply whenever parties provide for arbitration by the AAA "of an employment dispute." AAA Employment Rules art. 1.

22      Second, plaintiff contends that the unlawful non-compete agreement in the employment packet presented by BMJ creates "a pervasive aura of oppression and unconscionability." Opp'n at 9. Without

23  deciding whether that agreement is void, the Court notes its concern over the non-compete agreement.

24      Third, plaintiff asserts that the AAA Employment Rules do not confer plaintiff with a right to discovery, and they require her to pay administrative fees ranging from $150 to as much as $6,000.

25  Plaintiff points out that, under *Armendariz*, a mandatory employment arbitration agreement must meet certain minimum requirements when an employee's statutory civil rights are the subject of the dispute. These include the right to "more than minimal discovery" and the right not to pay fees that wouldn't

26  otherwise be required if the dispute were decided in a court of law. *Armendariz*, 24 Cal 4th at 102. The

27  failure of an arbitration agreement to meet these requirements does not automatically render it unenforceable, however. Instead, the Court may stay litigation on the conditions that the employer consent to discovery, and that the employer cover the employee's share of "all types of costs that are

28  unique to arbitration." *See id.* at 106, 113.

**United States District Court**
For the Northern District of California

1   and arbitration clauses of varying scope . . . the doctrine of unconscionability limits the extent to which

2   a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party

3   without accepting that forum for itself." *Id.* at 118. "The substantive one-sidedness of the *Armendariz*

4   agreement was compounded by the fact that it did not allow full recovery of damages for which the

5   employees would be eligible under the FEHA." *Circuit City v. Adams*, 279 F.3d at 893.

6          The court in *Circuit City v. Adams* found the arbitration agreement at issue there to be "virtually

7   indistinguishable" from the agreement in *Armendariz.    Id.*    The court found procedural

8   unconscionability because the arbitration agreement was a contract of adhesion was "a prerequisite to

9   employment, and job applicants are not permitted to modify the agreement's terms—they must take the

10  contract or leave it." 279 F.3d at 893. The court also found substantive unconscionability because the

11  agreement created an "asymmetrical arrangement" that   was "compounded by the fact that [the

12  arbitration agreement] did not allow full recovery of damages for which the employees would be eligible

13  under the FEHA." *Id.*

14         BMJ does not deny that the arbitration agreement is one-sided. Instead, BMJ relies on an

15  unreported case, *Gray v. Conseco, Inc.*, 2000 WL 148273 (C.D. Cal 2000), to argue that the Court

16  should "reject the holding" of *Armendariz*. The arbitration clause in *Gray* required the plaintiff

17  borrowers to arbitrate any and all disputes arising out of a loan agreement, while allowing the defendant

18  lender to bring a lawsuit in court for certain types of claims. *Id.* at *4. The *Gray* court declined to

19  follow *Armendariz* because it found that the holding in that case impermissibly "singles out and imposes

20  a special burden on arbitration agreements." *Id.* The *Gray* court, in characterizing the *Armendariz*

21  holding, stated, "the California Supreme Court has held that a one-sided arbitration clause is

22  unconscionable unless there is a valid business justification for the one-sidedness of the clause." *Id.*

23         To the extent the *Gray* court reads *Armendariz* to hold that a non-mutual arbitration clause is *per*

24  *se* unconscionable absent a valid business justification, this Court disagrees and finds that the holding

25  of *Armendariz* is not so broad. The California Supreme Court took pains to emphasize that the mere

26  lack of mutuality does not render a contract illusory, but "rather, that in the context of an arbitration

27  agreement *imposed by the employer on the employee*, such a one-sided term is unconscionable."

28  *Armendariz*, 24 Cal. 4th at 118 (emphasis added). Rather than focusing merely on the substantive, non-

1   mutual aspect of the arbitration clause, the court was apparently concerned with the procedural

2   unconscionability often found in adhesive arbitration agreements present in employment contracts.  The

3   *Armendariz* court stated that parties may contract for an asymmetrical arbitration agreement, but when

4   one is imposed by the stronger party on the weaker party through a contract of adhesion, courts must

5   step in to limit its unconscionable effects.

6          Furthermore, *Circuit City* refutes the *Gray* court's holding that *Armendariz* "singles out and

7   imposes a special burden on arbitration agreements."  *Gray*, 2000 WL 148273 at *4.  The Ninth Circuit

8   held that "unconscionability is a defense to contracts and does not single out arbitration agreements for

9   special scrutiny . . . ."  *Circuit City*, 279 F.3d at 895.  Because unconscionability is a generally

10  applicable contract defense, the Court's decision does not "run afoul of the FAA by imposing a

11  heightened burden on arbitration agreements."  *Id.* (citing *Doctor's Assocs.*, 517 U.S. at 687); *see also*

12  *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 935 (9th Cir. 2001) (the FAA does not preempt

13  state law governing the unconscionability of adhesion contracts).

14         Moreover, the *Gray* case is factually distinguishable from this case, as well as from *Armendariz*

15  and *Circuit City*, for reasons relating to both substantive and procedural unconscionability.  First, the

16  arbitration agreement in *Gray* was not entirely unilateral; both parties were generally obligated to

17  arbitrate "all disputes, claims, or controversies arising from or relating to the contract."  An exception

18  was carved out for the lender, who would "retain the option to use judicial or non-judicial relief to

19  enforce [certain rights] relating to the real property secured in a transaction underlying [the] arbitration

20  agreement."  2000 WL 1480273 at *2.  Thus, the substantive unconscionability was less severe.

21  Furthermore, the *Gray* plaintiffs "allege[d] little procedural unconscionability other than that the notes

22  are form contracts and they had to sign many papers at once."  *Id.* at *4.  The court found no other signs

23  of procedural unconscionability.  In contrast, in this case as in *Armendariz* and *Circuit City*, the

24  arbitration clause is entirely unilateral and thus more substantively unconscionable.  Moreover, the

25  oppression faced by a maid seeking a job from a sophisticated employer with the backing of a national

26  franchiser is far greater than that faced by a homeowner seeking a loan.

27         The Court is unable to distinguish the one-sided arbitration clause here from the ones in

28  *Armendariz* and *Circuit City*.  Because the arbitration agreement here was entirely one-sided and was

imposed by a strong employer on a much weaker employee, the Court finds it is unconscionable and therefore unenforceable under California law.

## CONCLUSION

For the foregoing reasons, and for cause shown, the Court DENIES defendant BMJ's motion to stay litigation pending arbitration (Docket No. 32).

**IT IS SO ORDERED.**

Dated: October 11, 2007

_____
SUSAN ILLSTON
United States District Judge